### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ALTA WATERFORD, LLC, an Illinois Foreign Corporation, | |
| Plaintiff, | Case No. 25-cv-14696 |
| v. | **Removal from the Circuit Court of Cook County, Illinois Case No. 2025 L 14097** |
| UNIVERSAL NEW ENERGY HOLDING GROUP, INC., a Nevada Corporation, | |
| Defendant. | |

## <u>NOTICE OF REMOVAL TO FEDERAL COURT</u>

Defendant, Universal New Energy Holding Group, Inc., by its attorneys, Vincent T. Borst and Latimer LeVay Fyock LLC, pursuant to 28 U.S.C. § 1332(a) and through this Notice of Removal of Civil Action, gives notice to the Plaintiff and to this Court of the removal of the above styled action pending in the Circuit Court of Cook County, Illinois, County Department, Law Division to the United States District Court for the Northern District of Illinois, Eastern Division, and in support thereof, Defendant states as follows:

1.      Plaintiff filed its Complaint in this matter on November 12, 2025.  A true and correct copy of the Complaint is attached hereto as part of Exhibit A.

2.      It is clear from the face of the Complaint that diversity jurisdiction exists in this matter.

3.      Plaintiff is an Illinois foreign corporation, and Defendant is a Nevada corporation.

4.      The amount in controversy is at least $202,250.00.

5.      Therefore, the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and cost, and is between citizens of different states.

6.      This removal is timely under 28 U.S.C. § 1446 because the Complaint was served upon Defendant on or about November 14, 2025.  This Notice of Removal is filed within thirty (30) days of the service of the Complaint and within one (1) year of the Complaint's filing.

7.      All the Defendants consent to the removal of this action in the United States District Court for the Northern District of Illinois, Eastern Division.

8.      Defendant attaches hereto a copy of all process and pleadings filed in the Circuit Court of Cook County, Illinois. See Exhibit A.

9.      Pursuant to 28 U.S.C. § 1446(a), this Notice of Removal of Civil Action is signed in conformance with Federal Rule of Civil Procedure 11.

10.      Notice of this Notice of Removal has been served by mail and e-mail upon Plaintiff and a copy of this Notice of Removal will be electronically filed in the Circuit Court of Cook County, Illinois.

WHEREFORE, Defendant Universal New Energy Holding Group, Inc. files its Notice of Removal of Civil Action from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois, Eastern Division.

Respectfully submitted,

**UNIVERSAL NEW ENERGY HOLDING, GROUP, INC.**

By: _____
    One of Its Attorneys

Vincent T. Borst (ARDC 6192904)
LATIMER LEVAY FYOCK LLC
55 West Monroe Street, Suite 1100
Chicago, Illinois  60603
(312) 422-8000
vborst@llflegal.com

2

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, a non-attorney, certify that on December 3, 2025, the foregoing ***Notice of Removal to Federal Court*** was (1) filed with the U.S. District Court Northern District of Illinois using its CM/ECF Document Filing System; and (2) mailed and emailed to the address listed below upon:

> George W. Svoboda
> The Law Office of George W. Svoboda
> P.O. Box 1299
> McHenry, Illinois 60051
> george@georgesvobodalaw.com

Under penalties as provided by law, I certify that the statements set forth in this Certificate of Service are true and correct.

/s/ Nidia Laureano
Latimer LeVay Fyock LLC

4925-9862-6174, v. 1

# EXHIBIT A

# SUMMONS

## IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**
*Check if this is not the 1st Summons issued for this Defendant/Respondent.*

FILED
11/12/2025 3:49 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L014097
Calendar, Q
35333002

**COUNTY:** Cook
*County Where You Are Filing the Case*

Enter the case information as it appears on your other court documents.

**PLAINTIFF/PETITIONER OR IN RE:** ALTA WATERFORD, LLC
*Who started the case.*   *First, Middle, and Last Name or Business Name*

**Case Number**

**DEFENDANTS/RESPONDENTS:** Universal New Energy Holding Group, Inc.
*Who the case was filed against.*

*First, Middle, and Last Name or Business Name*

**The Defendant/Respondent named above has been sued. Read this form for information about how to respond to this lawsuit. Also see page 4 for next steps.**

---

**For the person filling out this form: Read all instructions in this box.**

This *Summons* can only be used for certain types of cases. See the *How To Serve a Summons* Instructions for more information: ilcourts.info/summons-instructions.

Check 1 if this is a 30-day summons, or check 2 if this is a date certain summons. Fill in all the information in 1 or 2.

- Use a **date certain summons** if you are asking for money of $50,000 or less or recovery of your personal property that you think the Defendant has, and for some mandatory arbitration cases. In 2, fill in your court date and how to go to court. You may get the court date when you e-file or you may need to ask the Circuit Clerk's office.

- Use a **30-day summons** for most other case types.

Complete the rest of the form with the Defendant/Respondent's information and information about the lawsuit.

**If you are suing more than 1 Defendant/Respondent,** attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

---

**☑ 1. 30-DAY SUMMONS**

To participate in this case, you must **file** your *Appearance* and *Answer/Response* forms with the court within 30 days after you are served with this *Summons* (not counting the day of service) by e-filing or at:

Court Address: 50 W. Washington, Suite 1001, Chicago, Illinois 60602-1305
*Courthouse Street Address*

- or -

**☐ 2. DATE CERTAIN SUMMONS**

*Your court date is listed below. Information about getting a court date and how to attend is available from the Circuit Clerk. You can find their contact information at ilcourts.info/CircuitClerks.*

To respond to this *Summons*, you must **attend court** in one of the ways checked below on:

_____ at _____ ☐ a.m. ☐ p.m. in _____.
*Month, Day, Year*   *Time*   *Courtroom Number*

---

*This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts. Forms are free at ilcourts.info/forms.*

*Case Number:* _____

## Going to Court for a Date Certain Summons

Court dates may be in-person, remote, or a combination of in-person and remote.

☐ **In person** at: _____
                         *Courtroom Address*                             *Courtroom Number*

☐ **Remotely** (video or telephone)

    **By video conference** at: _____
                                        *Video Conference Website*

    Log-in information: _____
                            *Video Conference Log-in Information, Meeting ID, Password, etc.*

    **By telephone** at: _____
                            *Call-in Number for Telephone Remote Appearance*

To find out more about remote court options:

Phone: _____    or    Website: _____
            *Circuit Clerk's Phone Number*                        *Website URL*

## 3. ADDITIONAL INFORMATION ABOUT THE LAWSUIT

a. I am asking for the following amount of money in my *Complaint/Petition*: $ _202,250.00_____.

    *(Enter 0 if you are not asking for money)*

b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession) in my *Complaint/Petition*.

    ☐ Yes    ☑ No

## 4. DEFENDANT/RESPONDENT'S INFORMATION

a. Number of Defendants/Respondents being served:

    ☑ I am having 1 Defendant/Respondent served and their information is on this form below.

    ☐ I am having more than 1 Defendant/Respondent served. The first is listed below. I have attached *Additional Defendant/Respondent Address and Service Information* forms for the following number of additional Defendants/Respondents: _____.

                              *Number*

b. First Defendant/Respondent's **primary address/information** for service:

Name: _Universal New Energy Holding Group, Inc._____
         *First, Middle, and Last Name, or Business Name*

    Registered Agent's Name *(if you are serving the Registered Agent of a business)*:

    INCORPORATING SERVICES, LTD._____
         *First, Middle, and Last Name*

Street Address: _318 N CARSON ST #208_____
                 *Street, Apt #*

City, State, ZIP: _Carson City, NV, 89701_____
             *City*                            *State*                *Zip*

Telephone: _____    Email: _____

*Case Number:* _____

c.  **Second address** for this Defendant/Respondent:
☐ I do **not** have another address where the Defendant/Respondent might be found.
☐ I have another address where this Defendant/Respondent might be found. It is:

Street Address: _____
*Street, Apt #*

City, State, ZIP: _____
*City*                                        *State*                    *Zip*

Telephone: _____    Email: _____

d.  Person who will serve your documents on this Defendant/Respondent:
☐ Sheriff in Illinois  ☐ Special process server  ☑ Licensed private detective
☐ Sheriff outside Illinois: _____
*County & State*

---

**PLAINTIFF/PETITIONER INFORMATION:**
*Enter your information below.*

Name  The Law Office of George W. Svoboda
*First, Middle and Last Name*

Registered Agent's name, if any  George W. Svoboda
*First, Middle and Last Name*

Street Address  P.O. Box 1299
*Street, Apt #*

City, State, ZIP:  McHenry, IL 60051
*City*                                        *State*                    *Zip*

Telephone:  (224) 360-0696            Email:  george@georgesvobodalaw.com

Be sure to **check your email every day** so you do not miss important information, court dates, or documents from other parties.

---

**STOP**  The Circuit Clerk and officer or process server will fill in this section.

**To be filled in by the Circuit Clerk:**

11/12/2025 3:49 PM Mariyana T. Spyropoulos

Witness this Date: _____        *Seal of Court*

Clerk of the Court: _____

**To be filled in by an officer or process server:**

Date of Service: _____

*Fill in the date above and give this copy of the Summons to the person served.*

---

**Note to officer or process server:**
○ If 1 is checked, this is a 30-day *Summons* and must be served within 30 days of the witness date.
○ If 2 is checked, this is a date certain *Summons* and must be served at least 21 days before the court date, unless 3b is checked yes.
   ▪ If 2 is checked **and** 3b is checked yes, the *Summons* must be served at least 3 days before the court date.
○ Fill in the date above and give this copy of the *Summons* to the person served.
○ You must also complete the attached *Proof of Service* form and file it with the court or return it to the Plaintiff.

Case Number: _____



## NEXT STEPS FOR PERSON FILLING OUT THIS FORM:

When you file a lawsuit, you must notify the person or business you are suing of the court case by having the *Summons* and Complaint or Petition delivered to them. This is called "serving" them.

File your *Summons* and Complaint or Petition with the Circuit Clerk in the county where your court case should be filed. The Circuit Clerk will "issue" the *Summons* by putting a court seal on the form.

Have the sheriff or a private process server serve the *Summons* and a copy of the Complaint or Petition on the Defendant/Respondent. You cannot serve the *Summons* yourself.

 Learn more about each step in the process and how to file in the instructions: ilcourts.info/summons-instructions.



## NEXT STEPS FOR PERSON RECEIVING THIS DOCUMENT:

**You have been sued:**
- Read all documents attached to this *Summons*.
- All documents referred to in this *Summons* can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.
- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees (Civil)*.
- When you go to court, it is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

**If Section 1 on page 1 of this *Summons* is checked (30-day summons*)*:**
- You **must** file official documents called an *Appearance* and an *Answer/Response* with the court within 30 days of the date you were served with this *Summons*.
- If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.
- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.
- You should be notified of any future court dates.

**If Section 2 on page 1 of on this *Summons* is checked (date certain summons):**
- You **must** attend court on the date listed in Section 2 of this *Summons*.
- If you do not attend that court date, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

**Need Help? ¿Necesita ayuda?**
- Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents.
- Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.
- You can also get free legal information and legal referrals at illinoislegalaid.org.
- If there are any words or terms that you do not understand, please **visit Illinois Legal Aid Online** at ilao.info/glossary. You may also find more information, resources, and the location of your local legal self-help center at: ilao.info/lshc-directory.

Case Number: _____

# PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**
*Check if this is not the 1st Summons issued for this Defendant/Respondent.*

**COUNTY:** Cook _____
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** ALTA WATERFORD, LLC _____
*Who started the case.*      *First, Middle, and Last Name or Business Name*

**DEFENDANTS/RESPONDENTS:** Universal New Energy Holding Group, Inc.
*Who the case was filed against.*

_____

_____

*First, Middle, and Last Name or Business Name*

_____
**Case Number**

---

**STOP** | Do not complete the rest of the form. **The sheriff or special process server will fill in the form.** Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent who will be served.

---

My name is _____ and I state:
   *Officer/Process Server First, Middle, Last Name*

## SERVICE INFORMATION

Defendant/Respondent: _____
   *First, Middle, Last Name, or Business Name*

☐ I was not able to serve the *Summons* and Complaint/Petition on the Defendant/Respondent named above.

- or -

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent named above as follows:

   ☐ **Personally** on the Defendant/Respondent:
   ☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____

   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

   Address, Unit#: _____

   City, State, ZIP: _____

   ☐ On **someone else at the Defendant/Respondent's home** who is at least 13 years old and is a family member or lives there:
   Name of person served: _____
                              *First, Middle, Last Name*
   ☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____

   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

   Address, Unit#: _____

   City, State, ZIP: _____
   and by sending a copy to this Defendant/Respondent in a postage-paid, sealed envelope to the above

   address on this date: _____.

*Case Number:* _____

☐ On the **Business's agent:** _____
                         *First, Middle, Last Name*

    ☐ Male ☐ Female ☐ Non-Binary   Approx. Age: _____ Race: _____

    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address, Unit#: _____

    City, State, ZIP: _____

## SERVICE ATTEMPTS

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

**First Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address, Unit#: _____

    City, State, ZIP: _____
    Other information about service attempt:

    _____
    _____
    _____

**Second Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address, Unit#: _____

    City, State, ZIP: _____
    Other information about service attempt:

    _____
    _____
    _____

**Third Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address, Unit#: _____

    City, State, ZIP: _____
    Other information about service attempt:

    _____
    _____
    _____

## SIGN

I certify under 735 ILCS 5/1-109 that:

1) everything in this document is true and correct, or I have been informed or I believe it to be true and correct, and

2) I understand that making a false statement on this form is perjury and has penalties provided by law.

Your Signature /s/_____ Print Your Name _____

You are: ☐ Sheriff in Illinois        ☐ Special process server
         ☐ Sheriff outside Illinois: _____ ☐ Licensed private detective, license number: _____
                        *County and State*                                           *License number*

**FEES:**
    Service and Return: $_____ Miles: $_____ Total: $_____

# ADDITIONAL DEFENDANT/RESPONDENT ADDRESS AND SERVICE INFORMATION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

**COUNTY:** _____
*County Where You Are Filing the Case*

Enter the case information as it appears on your other court documents.

**PLAINTIFF/PETITIONER OR IN RE:** _____
*Who started the case.*          *First, Middle, and Last Name or Business Name*

**DEFENDANTS/RESPONDENTS:** _____
*Who the case was filed against.*

_____

_____
*First, Middle, and Last Name or Business Name*

_____

**Case Number**

Use this form only if you are serving more than one Defendant/Respondent. Attach this document to the *Summons*.

## NEXT DEFENDANT/RESPONDENT'S INFORMATION

*Enter the name and address of the next person who will be served with the* Summons.

A. Defendant/Respondent's **primary address/information** for service:

Name: _____
     *First, Middle, and Last Name, or Business Name*

Registered Agent's Name *(if you are serving the Registered Agent of a business)*:

_____
*First, Middle, and Last Name*

Street Address_____
         *Street, Apt #*

City, State, ZIP: _____
         *City*                    *State*          *Zip*

Telephone: _____  Email: _____

B. **Second address** for this Defendant/Respondent:

☐ I do **not** have another address where the Defendant/Respondent might be found.

☐ I have another address where this Defendant/Respondent might be found. It is:

Street Address_____
         *Street, Apt #*

City, State, ZIP: _____
         *City*                    *State*          *Zip*

Telephone: _____  Email: _____

C. Person who will serve your documents on this Defendant/Respondent:

☐ Sheriff in Illinois  ☐ Special process server  ☐ Licensed private detective

☐ Sheriff outside Illinois: _____
                    *County & State*

*This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts. Forms are free at ilcourts.info/forms.*

SU-AD 1506.2                    Page 1 of 1                    (11/24)

FILED
11/12/2025 3:49 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L014097
Calendar, Q
35333002

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| ALTA WATERFORD, LLC, an Illinois Foreign Corporation; | ) ) ) | |
| Plaintiff, | ) | |
| VS. | ) | Gen No. _____ |
| | ) | |
| UNIVERSAL NEW ENERGY HOLDING GROUP, INC., a Nevada Corporation; | ) ) ) | Ad Damnum $202,250.00 |
| Defendant. | ) | |

## AFFIDAVIT PURSUANT TO
## SUPREME COURT RULE 222 (B)

Pursuant to Supreme Court Rule 222 (B), counsel for the above-named plaintiff certifies that plaintiff seeks money damages in excess of Fifty Thousand and 00/100 Dollars ($50,000).

By: /s/ George W. Svoboda
Attorney for Plaintiff

Prepared by:

George W. Svoboda, Atty no. 65708
The Law Office of George W. Svoboda
P.O. Box 1299
McHenry, IL 60051
(224) 360-0696 – Phone
Email: george@georgesvobodalaw.com

FILED
11/12/2025 3:49 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L014097
Calendar, Q
35333002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| ALTA WATERFORD, LLC, an Illinois Foreign Corporation; | ) ) ) | |
| Plaintiff, | ) | |
| VS. | ) ) | Gen No. _____ |
| UNIVERSAL NEW ENERGY HOLDING GROUP, INC., a Nevada Corporation; | ) ) ) | Ad Damnum $202,250.00 |
| Defendant. | ) ) | |

### COMPLAINT

NOW COMES the Plaintiff, ALTA WATERFORD, LLC, by its attorney, The Law Office of George W. Svoboda, and brings this complaint against Defendant for breach of contract and states as follows:

### PARTIES

1. Plaintiff, Alta Waterford, LLC, is an Illinois foreign corporation and a citizen of St. Kitts & Nevis and maintains its principal place of business at Hunkins Plaza, Charlestown, St. Kitts & Nevis and is engaged generally in the delivery of investor relations and marketing services.

2. Plaintiff is informed and believes, and thereon alleges, that Defendant UNIVERSAL NEW ENERGY HOLDING GROUP, INC. (hereinafter referred to as "UNEH)"), is a Nevada corporation and maintains its principal place of business 1980 Festival Plaza Drive, Suite 300, Las Vegas, NV 89135 and is a publicly traded company that generally require the services of Plaintiff.

### JURISDICTION AND VENUE

3. This Court has jurisdiction because the Plaintiff is registered to do business in Illinois

1 of 4

and pursuant to the contract described herein below, Defendant UNEH agreed that the contract would be governed by the laws of the State of Illinois. In addition, the agreement provides, in pertinent part, as follows: "Each party hereby unconditionally and irrevocably waives, to the fullest extent permitted by law, any claim to assert that the law of any jurisdiction other than the State of Illinois governs this Agreement. All disputes, controversies, or claims arising out of, or in connection with, this Agreement shall be litigated in any state or federal court in Illinois." Venue is proper in Cook County, Illinois because the Plaintiff maintains its principal office in Chicago, Illinois.

## ALLEGATIONS OF FACT

4. The Defendant owes Plaintiff at least $202,250.00.

5. On or about January 4, 2023, the Defendant agreed in a written contract (hereinafter referred to as a "Agreement") to pay Plaintiff for investor relations services and to generally increase the liquidity of trading volume in the Defendant's stock. A true and correct copy of the Agreement is attached hereto as Exhibit "1" and incorporated herein by reference.

6. The Agreement was effective on March 13, 2023.

7. At the time of executing the Agreement, Defendant was named, FASTBASE INC.

8. Defendant changed its name to UNIVERSAL NEW ENERGY HOLDING GROUP, INC. on June 19, 2024. *See* Nevada corporate record attached hereto as Exhibit "2".

9. Plaintiff has developed and nurtured a list of investment newsletter subscribers that typically invest in small cap stocks.

10. Plaintiff's list of subscribers is valuable to publicly traded companies like the Defendant.

11. Plaintiff performed the investor relations services agreed to in the contract by disseminating UNEH's news releases to Plaintiff's list of subscribers to Plaintiff's investment newsletters.

12. Plaintiff performed by implementing and executing an email campaign to Plaintiff's subscribers.

13. The Plaintiff committed in the contract that $30,000 of trading liquidity would be generated during the campaign and achieved this goal on or about January 30, 2024.

14. Plaintiff performed the investor relations services agreed to in the contract and invoiced the Defendant in the amount of $5,000.00 for the work performed.

15. Section 28 of the Agreement provides that trading liquidity generated beyond $30,000.00 would "rollover" and begin a new contract under the same terms.

16. The "rollover" provision recognizes that Plaintiff's campaign generates investor interest that is hard to predict and continues to accrue benefits to customers beyond the initial campaign goals.

17. Plaintiff also continues to promote customers after the initial campaign in its newsletters.

18. As of August 30, 2024, Plaintiff generated over $221,182.77 of additional liquidity beyond the initial campaign, which equates to 7 "rollover" contracts ("campaigns"). The amount owing under these 7 contracts is $35,000.00.

19. The Defendant had a full understanding of the additional "rollover" campaigns.

20. Customers may terminate the "rollover" campaigns by giving five days notice to Alta Waterford.

21. The Defendant has not provided any termination notice under the terms of original Agreement.

22. Section 9 of the Agreement provides for a daily penalty of $250.00 if payment is not received after five days. As of November 9, 2025, the total penalty amount was $162,250.00.

23. Section 20 of the Agreement provides for attorney's fees for collection, specifically that "the Customer shall reimburse the Service Provider upon demand for any legal fees and court (or other administrative proceeding such as arbitration) costs or expenses that the Service Provider incurs in connection with the breach or default, regardless whether suit is commenced or judgment entered. Such costs shall include legal fees, including contingency based attorney's fees at the rate in Service Provider's attorney fee agreement, and costs incurred in the negotiation of a settlement, enforcement of rights, litigation expenses or otherwise."

24. The Defendant has not paid Plaintiff even after multiple demands. A true and correct copy of the latest demand for payment is attached hereto as Exhibit "3" and incorporated herein by reference.

## COUNT I – BREACH OF CONTRACT

25. Plaintiff repeats and realleges paragraphs 1 through 24 as if fully set forth herein.

26. Plaintiff offered to perform services to the Defendant.

27. The Defendant agreed to and accepted the terms of the offer and agreed to pay the Plaintiff for its services.

28. The parties entered into a written contract by signing the Agreement.

29. The Defendant refused and failed to pay Plaintiff in breach of the contract.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II – ACCOUNT STATED

30. Plaintiff repeats and realleges paragraphs 1 through 24 as if fully set forth herein.

31. The Defendant received a statement of account of outstanding invoices from the Plaintiff for work Plaintiff performed.

32. Plaintiff's attorney sent a demand for the account balance by email on October 10, 2024.

33. Defendant retained the account beyond a reasonable time without objection constitution a recognition of the correctness of the account and establishing an account stated.

34. This retention without objection implies assent to the account.

35. The Plaintiff made multiple demands for payment.

36. The Defendant has not paid the Plaintiff.

WHEREFORE, Plaintiff prays for relief as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

- For monetary damages in the amount of $202,250.00;

- For costs of suit incurred herein;

- For attorney's fees pursuant to the Agreement; and

- For whatever additional relief this Court deems just and equitable.

Respectfully submitted,

By: /s/ George W. Svoboda
Attorney for Plaintiff

Atty. No.: 65708
George W. Svoboda
The Law Office of George W. Svoboda
P.O. Box 1299
McHenry, IL 60051
(224) 360-0696 – Phone
Email: george@georgesvobodalaw.com

# VERIFICATION

Under the penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes the same to be true.

Date: 11/10/2025

On behalf of Plaintiff

**EXHIBIT "1"**

**THIS AGREEMENT FOR SERVICE (this "Agreement"), dated on this 13th day of March, 2023**

**BETWEEN**

**Fastbase Inc.**
140 Broadway, 46th Floor
New York, NY 10005

**(the "Customer")**

**- AND -**

**Alta Waterford LLC**
Hunkins Plaza,
Charlestown, St. Kitts & Nevis

**(the "Service Provider")**

**BACKGROUND:**

A. The **Customer** is of the opinion that the **Service Provider** has the necessary qualifications, experience and abilities to provide services to the **Customer**.

B. The **Service Provider** is agreeable to providing such services to the **Customer** on the terms and conditions set out in this Agreement.

**IN CONSIDERATION OF** the matters described above and of the mutual benefits and obligations set forth in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

**Services Provided**

1. The **Customer** agrees to engage the **Service Provider** to provide the Customer with services that may include any of the following activities: (the "Services"):

   a. The **Customer** desires to engage the services of the **Service Provider** to perform the Customer's consulting services regarding all phases of the **Customer's** investor awareness. The **Service Provider** will consult with the Board of Directors, the Officers of the **Customer**, and / or certain administrative staff

members of the **Customer**, undertake the Customer's investor awareness activities in the regulated securities industry.

**b.** **Service Provider** and **Customer** will consider the campaign a success if at least $30,000 dollars of liquidity is generated during the "liquidity period".

**c.** The **Customer** or **Service Provider** can adjust the start date of the campaign via written email communication between the parties.

**d.** The Marketing campaign shall be conducted until liquidity goals are met and will be targeted to addresses of potential investors.

**e.** Disseminating the company's new release ("the Release") on Fastbase Inc. will be hosted online as a landing page, aimed at potential investors, describing the companies business and its self-defined value to existing and potential shareholders. **Customer** will provide **Service Provider** with current news on Fastbase Inc.'s company.

**f.** Creating an email ("the Email") to generate interest on the part of existing and potential shareholders in Fastbase Inc.'s business.

**g.** Sending out opt-in text messages to investors about Fastbase Inc.'s business.

**h.** Leveraging social media platforms to distribute information about the Fastbase Inc.'s business.

**i.** Buying online media on behalf of Fastbase Inc.'s business in an effort to bring awareness to the stock.

**<u>Term of Agreement</u>**

**2.** The term of this Agreement will begin on the date of this Agreement (or on an otherwise mutually-agreed commencement date) and will remain in full force and effect until the completion of the minimum number of liquidity as stipulated in this agreement.

**<u>Success Metrics</u>**

**3.** According to SEC regulation, it is illegal for the **Service Provider** to work on a commission or performance basis so no guarantees or expectations can be made in terms of liquidity, appreciation or any other variables. This section or other sections are not to be misconstrued otherwise.

**4.** To calculate liquidity generated during the "liquidity period", we take the cumulative total positive of daily activity on the stock while operating: the share volume multiplied

by the high price of the day. Liquidity includes both buying and selling. The trading data will be exported directly from the respective exchanges online data charts. Each exchange that the stock is listed on will be independently counted and the total of all exchanges combined. Liquidity will be counted towards the success from any source, even if evidence shows that it was completely independent of the **Service Provider**.

5. The **Service Provider** is confident that **Customer** could see over $30,000 dollars or more in trading volume (liquidity) on Fastbase Inc. from any source on any exchange during the "liquidity period".

6. The parties agree to do everything necessary to ensure that the terms of this Agreement take effect. This will include any actions required as a pre-requisite by the **Customer**.

### Compensation

7. For the services rendered by the **Service Provider** as required by this Agreement, the **Customer** will pay to the **Service Provider** compensation as follows:

   a. The **Service Provider** will be compensated $5,000 (five thousand) dollars from the **Customer** for this campaign. The **Service Provider** shall provide payment wire settlement details to a third party bank account via email to the **Customer**. The payment details will vary from campaign to campaign and will likely differ from the **Service Providers** business this agreement is with.

8. There is no money to be exchanged upon execution of this engagement. Payment of money (Paragraph 7a) must be made to the **Service Provider** by the **Customer** within (1) business day once the campaign is complete and expectations have been met as outlined in Paragraph 1b.

9. The **Customer** understands that the **Service Provider**'s compensation as provided in this Agreement will constitute the full and exclusive monetary consideration and compensation for all services performed by the **Service Provider** in this agreement. Any additional compensation will require a new agreement. Payment of money (Paragraph 7a) must be made to the **Service Provider** by the **Customer** within (5) days once the **Customer** is invoiced by the **Service Provider**. If payment is not made to the **Customer** in (5) days, the **Customer** will incur a daily penalty of $250.00 to be paid in addition to the compensation outlined in Paragraph 7a. This penalty will accrue concurrently for each late invoice.

10. **Customer** hereby grants and conveys to the **Service Provider** a security interest in the collateral listed in this section of the Agreement to ensure performance by the **Customer** under the Agreement. Delinquent payments can be satisfied at any time by forcing a liquidation of **Customer** assets that are part of **Customer's** security interest. The security interest granted to **Service Provider** by **Customer** in this section includes **Customer's** equipment, vehicles, materials, intellectual property, software, data, funds in **Customer's**

business bank account(s), **Customer's** accounts receivable(s) or any other **Customer** property to satisfy monies owed. Value of business bank accounts is that of available funds at time of demand. Value of accounts receivable is that of the total of outstanding invoices, whether current or delinquent. If an independent appraiser is required to determine the value of any specific items of collateral, the **Service Provider** shall have sole discretion to select the appraiser. The **Customer** shall be responsible for paying the fee charged by the appraiser and any other expenses incurred in connection with the appraisal. Value of other items to be as follows:

• Running trucks/vehicles will be valued at $20,000.00 each irrespective of vehicle mileage and age. Vehicles not road worthy to be valued at $2,000.00 each.

• Current assets such as Cash, Cash equivalents, Short-term deposits, Accounts receivables, Marketable securities at face value.

• Real Estate, Land, and Buildings at Zillow estimated value or actual appraised value by a licensed real estate appraiser.

• Lease agreements, rental income streams, and other active real estate streams will be valued at one month's worth of income.

• Small cap stocks that have a per-share value of less than $5.00 will be valued at 25% of their lowest price over the past 30 days.

• Mid and large cap stocks valued above $5.00 per share will be valued at face value.

• Timberland, forestry, mining rights and mining assets valued at 50% of the last sale.

• Computers, servers, network equipment, switches, office cubicals, desks, chairs, cameras valued at $250.00 each.

• Software, data, applications that help run operations to be valued as a lump sum of $2,000.00.

• Aircraft valued by an independent appraiser.

• Cryptocurrency will be valued at 25% of the lowest USD price over the past 30 days as listed on CoinMarketCap.com.

• The value of non-fungible tokens (NFTs) will be based on the lowest price of the entire collection over the past 30 days as listed on OpenSea.com. The NFTs will be valued at 25% of this price. If there have been no recent sales, each NFT will be valued at a lump sum of $50.00.

• Intellectual property such as trademarks and copyrights valued at a lump sum of $3,000.00 each.

• Patents valued at a lump sum of $5,000.00 each.

## Additional Compensation

**11.** The **Customer** understands that the **Service Provider**'s compensation as provided in this Agreement will constitute the full and exclusive monetary consideration and compensation for all services performed by the **Service Provider** in this agreement. Any additional compensation will require a new agreement.

## Reimbursement of Expenses

**12.** The **Service Provider**'s expenses for providing the services described in this agreement are included in the compensation amount. Any services to be provided by the **Service**

**Provider** to the **Customer** that are outside of the scope of this agreement will be subject to a separate agreement.

## Confidentiality

13. "Confidential Information," means information that is not generally known and that is proprietary to the **Customer** or that the **Customer** is obligated to treat as proprietary. This information includes, without limitation trade secret information about the **Customer** and its products, information concerning the **Customer's** business as the **Customer** has conducted it since the **Customer's** incorporation or as it may conduct it in the future; and information concerning any of the **Customer's** past, current, or possible future products, including, without limitation, information about the **Customer's** research, development, engineering, purchasing, manufacturing, accounting, marketing, selling, or leasing efforts. Any information reasonably considered to be Confidential Information that the **Customer** shall be treated as Confidential Information and be presumed to be Confidential Information whether **Service Provider** or others originated it and regardless of how it obtained it. Except as required in its duties to the **Customer** and with written approval by the **Customer**, the **Service Provider** will never, either during or after the term of this Agreement, use or disclose Confidential Information to any person not authorized by the **Customer** to receive it. The **Service Provider** agrees that they will not disclose, divulge, reveal, report or use, for any purpose, any Confidential Information with respect to the business of the **Customer**, which the **Service Provider** has obtained, except as will be necessary or desirable to further the business interests of the **Customer**.

14. This Agreement, as well as any email, phone, or postal communication related to it, shall be strictly confidential for The **Customer** and shall not be shared with any individual, entity, agency, auditor, transfer agent, or compan. No part of this agreement, whether in whole or in part, shall be shared with any person outside of The **Customer's** company without the explicit permission of the **Service Provider**, which must be provided in written communication such as email. If This Agreement is shared internally between individuals at The **Customer's** company, this provision extends to them as well. The **Service Provider** is exempt from this restriction and may share This Agreement and communication with any party he deems necessary without requiring permission, such as in the case of dispute resolution. If The **Customer** breaches this provision, The **Customer** must issue The **Service Provider** an immediate payment of $5,000.00 for each instance of confidentiality breach. If a lawsuit, arbitration, mediation, or dispute resolution occurs, all information gathered during the discovery process can only be shared with the lawyers involved in the case. A restraining order will be put in place to prohibit the sharing of this information with the **Customer** or any other person, except for the **Service Provider**. The **Service Provider** is not subject to this restriction and may receive all necessary information for the defense of the case. The **Customer** agrees in advance to the restraining order, to keep all information about the case confidential, and to seal the case at the **Service Providers** request.

### Ownership of Materials

15. All materials developed or produced by the **Service Provider** under this Agreement will be the property of the **Service Provider**, and the use of these materials by the **Service Provider** will not be restricted in any manner. In order to protect the trade secrets of the **Service Provider**, the **Service Provider** is not required to provide any documentation or reporting during the engagement. This includes the names of the publications, individuals that the **Service Provider** communicates with, the number of disseminations, and any other related items. All rights to the materials developed or produced by the **Service Provider** will be retained by the **Service Provider**, and the **Customer** will have no ownership or control over these materials. The **Service Provider** is free to use, distribute, or dispose of these materials as they see fit, at their own discretion, without any obligation to the **Customer**. The **Service Provider** must ensure that only true and accurate information is published about the **Customer's** company. The **Service Provider** has the option verify this by approving the content from the **Customer** to be distributed before it is published. If content is provided by the **Service Provider**, it is the **Customer's** responsibility to promptly review the content and make any necessary edits or adjustments to ensure compliance with regulations. If the content provided by the **Service Provider** is not promptly approved or edited, the **Service Provider** will assume that the content is accurate and confirmed by the **Customer**.

### Assignment

16. The **Service Provider** will not voluntarily or by operation of law assign or otherwise transfer its obligations under this Agreement without the prior written consent of the **Customer**.

### Capacity / Independent Contractor

17. It is expressly agreed that the **Service Provider** is acting as an independent contractor and not as an employee in providing the Services under this Agreement. The **Service Provider** and the **Customer** acknowledge that this Agreement does not create a partnership or joint venture between them, and is exclusively a contract for service. At no time will the **Service Provider** provide services that would require **Service Provider** to be registered and licensed with any federal or state regulatory body or self-regulating agency. The **Service Provider's** employees, subcontractors, and agents, if any, who perform services for the **Customer** under this Agreement shall also be bound by the provisions of this Agreement.

18. The **Customer**, upon entering this Agreement, hereby warrants and guarantees to the **Service Provider** that to the best knowledge of the Officers and Directors of the Customer, all statements, either written or oral, made by the Customer to the Service

Provider are true and accurate, and contains no material misstatements, or omission fact. The **Service Provider** acknowledges that estimates of performance made by the **Customer** are based upon the best information available to the **Customer** officers at the time of said estimates of performance. The **Customer** acknowledges that the information it delivers to the **Service Provider** will be used by the **Service Provider** in preparing materials regarding the Company's business, including but not necessarily limited to, its financial condition, for dissemination to the public. Therefore the **Customer** shall hold the **Service Provider** harmless from any and all errors, omissions, misstatements, except those made in a negligent or intentionally misleading manner in connection with all information furnished by the Customer to Service Provider.

### Modification of Agreement

**19.** Any amendment or modification of this Agreement or additional obligation assumed by either party in connection with this Agreement will only be binding if evidenced in writing signed by each party or an authorized representative of each party.

### Costs and Legal Expenses

**20.** If the **Service Provider** deems that the **Customer** is in breach or default under this contract, the **Customer** shall reimburse the **Service Provider** upon demand for any legal fees and court (or other administrative proceeding such as arbitration) costs or expenses that the **Service Provider** incurs in connection with the breach or default, regardless whether suit is commenced or judgment entered. Such costs shall include legal fees, including contingency based attorney's fees at the rate in **Service Provider's** attorney fee agreement, and costs incurred in the negotiation of a settlement, enforcement of rights, litigation expenses or otherwise. Except as expressly stated otherwise in this document, the **Customer** must pay its own legal and other costs and expenses of negotiating, preparing, executing and performing its obligations under this document. The **Customer** understands that under no circumstance will the **Service Provider** pay any costs related to arbitration or litigation. It is the **Customer's** responsibility to pay all costs for both parties in the event of a dispute, default or breach of contract. This includes collection, contingency, damages and commission costs incurred by the **Service Provider** in recovering money owed by the **Customer**.

**21.** The **Customer's** director signing this agreement agrees to be held personally liable for any payment owed under this Agreement, or any amendments attached hereto or incorporated by reference, to **Service Provider**. Nothing within this Agreement shall be interpreted as to waive or limit the personal liability of any of **Customer's** business partners or associates.

**22. The Customer** shall indemnify, defend, and hold harmless the **Service Provider** and its directors, officers, employees, and agents with respect to any claim, loss, expense, cost,

judgment, demand, cause of action, debt or liability (the "Claims") and pay any costs or damages, including reasonable attorneys' fees, that will be awarded against the claimant to the extent the Claims.

### Time of the Essence

23. Time is of the essence in this Agreement. No extension or variation of this Agreement will operate as a waiver of this provision.

### Entire Agreement

24. If the **Customer** wishes to terminate this engagement, the **Customer** agrees to notify the **Service Provider** (4) business days before requesting a cancellation date via written communication delivered to the **Service Provider's** email address or postal address. To be released, each day of the engagement will be billed to the **Customer** at a rate of one fifth of the total compensation up to and not exceeding the total compensation of this agreement as outlined in Paragraph 7a. These funds must be wired to the **Service Provider's** designated account before release of engagement. If the payment is not made promptly, Paragraph 9 late payment penalties apply to the cancellation compensation. It is agreed that there is no representation, warranty, collateral agreement or condition affecting this Agreement except as expressly provided in this Agreement.

25. If the **Service Provider** deems that he is unable to produce adequate liquidity for the **Customer** specifically due to share float issues or the inability for retail investors to buy shares the **Service Provider** reserves the right to cancel the campaign and retrieve operating expenses not exceeding one fifth per day of the total compensation of this agreement as outlined in Paragraph 7a. An indication of share float issues would be a wide price difference between the bid & spread quotation price exceeding 3% on OTCMarkets.com. If the spread between bid & spread quotation exceeds 3% during the campaign the **Service Provider** reserves the right to retrieve operating costs explained above. If a short position on the **Customer's** stock exceeding 30% occurs during the campaign as exported from OTCShortReport.com, the **Service Provider** reserves the right to cancel the campaign and retrieve operating costs as detailed above. If the **Customer** performs a reverse split on the stock, the **Service Provider** has the option to cancel the engagement and retrieve operating expenses explained above. The **Customer** must have an active market maker with shares in place on all exchanges in advance of the **Service Provider** running the campaign.

26. If the **Customer's** company fails to submit financial filings and disclosures on time, transitions to alternative reporting status with the Securities and Exchange Commission, decreases its listing status to a lesser exchange (defined as an exchange with lower overall trading volume or less stringent listing requirements), becomes a shell risk, shell, control dispute, dark or defunct, delinquent, caveat emptor, bankruptcy, yield, stop,

expert market, or receives the warning "Unsolicited Quotes Only," the **Service Provider** can cancel the engagement and retrieve operating expenses not exceeding the total compensation outlined in Paragraph 7.

27. The **Customer** must notify the **Service Provider** in writing in advance of a reverse split, name change, or symbol change so that the **Service Provider** can adjust the disseminations. If the **Customer** fails to notify the **Service Provider**, the **Service Provider** reserves the right to cancel the engagement and retrieve operating expenses outlined in Paragraph 5.

28. Trading liquidity generated beyond the performance estimate of $30,000 by the **Service Provider** for the **Customer** outside of this agreement will rollover and begin an additional agreement under the terms of this agreement. The **Customer** or **Service Provider** can terminate the rollover period by 5 day written notice upon end of this initial contract.

### Limitation of Liability

29. It is understood and agreed that the **Service Provider** will not violate any Securities Laws to perform services. See **EXHIBIT A** for disclosure that will be included in all communications.

30. The **Customer** does not know the details on how, or to whom the **Service Provider** get his database from, nor how they are communicated too, or what guarantees, if any are made in connection to the marketing of stocks. In no event will the **Service Provider** be liable to the **Customer** for any damages that it can incur arising out of this agreement. The **Service Provider** will not be liable to the **Customer** or to any third party for indirect, incidental, consequential, special, or exemplary damages arising out of this agreement.

### Inurnment

31. This Agreement will inure to the benefit of and be binding on the parties and their respective heirs, executors, administrators, successors and permitted assigns.

### Currency

32. Except as otherwise provided in this Agreement, all monetary amounts referred to in this Agreement are in United States dollars.

### Titles/Headings

33. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement.

### Gender

34. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

### Governing Law

35. This Agreement is made in the State of Illinois, which state the parties agree has a substantial relationship to the parties and to the underlying transaction embodied hereby. Accordingly, in all respects, this Agreement and the obligations arising hereunder shall be governed by, and construed in accordance with, the laws of the State of Illinois applicable to contracts made and performed in such state and any applicable law of the United States of America. Each party hereby unconditionally and irrevocably waives, to the fullest extent permitted by law, any claim to assert that the law of any jurisdiction other than the State of Illinois governs this Agreement. All disputes, controversies, or claims arising out of, or in connection with, this Agreement shall be litigated in any state or federal court in Illinois. Each party hereby accepts jurisdiction of the State of Illinois and agrees to accept service of process as if it were personally served within such state. Each party irrevocably waives, to the fullest extent permitted by law, any objection that the party may now or hereafter have to the jurisdiction of the courts of Illinois and any claim that any such litigation brought in any such court has been brought in an inconvenient forum.

### Dispute Resolution

36. In the event a dispute arises out of or in connection with this Agreement the parties will attempt to resolve the dispute through friendly consultation.

37. If the dispute is not resolved within a reasonable period of time then the **Service Provider** reserves the sole right to determine if the parties will use mediation, arbitration or court litigation, which will take place in the State of Illinois, United States. If the **Service Provider** chooses to proceed with mediation, any or all outstanding issues will be submitted to mediation in accordance with any statutory rules of mediation. If mediation is not successful in resolving the entire dispute, any outstanding issues will be submitted to final and binding arbitration in accordance with the laws and jurisdiction of the State of Illinois, United States. The arbitrator's award will be final, and judgment will be entered upon it by any court having jurisdiction. The **Service Provider** shall have the sole right to select the mediation or arbitration firm and the rules by which the dispute will be resolved.

### Severability

**38.** In the event that any of the provisions of this Agreement are held to be invalid or unenforceable in whole or in part, all other provisions will nevertheless continue to be valid and enforceable with the invalid or unenforceable parts severed from the remainder of this Agreement.

### Waiver

**39.** The waiver by either party of a breach, default, delay or omission of any of the provisions of this Agreement by the other party will not be construed as a waiver of any subsequent breach of the same or other provisions.

**IN WITNESS WHEREOF the parties have duly executed this Service Agreement on this 4th of January 2023 (signature section follows)**

**Service Provide**

_____
Manager of Alta Waterford LLC

Hunkins Plaza,
Charlestown, St. Kitts & Nevis

**Customer**

_____
Fastbase Inc.

140 Broadway, 46th Floor
New York, NY 10005

**EXHIBIT A** – Compliance Disclaimer

Alta Waterford reports/releases/profiles are commercial advertisements and intended for general information purposes only. We are engaged in the business of marketing and advertising companies for monetary compensation unless otherwise stated. The paying party may own shares and may liquidate them during the promotional period.

PLEASE NOTE WELL: Alta Waterford and its employees are not a Registered Investment Advisor, Broker Dealer or a member of any association for other research providers in any jurisdiction whatsoever and we are not qualified to give financial advice. Alta Waterford WILL NEVER ACCEPT FREE OR RESTRICTED TRADING SHARES IN ANY COMPANIES MENTIONED at Alta Waterford &/OR ANY OF OUR SOCIAL NETWORKING AND EMAIL ADVERTISING PLATFORMS.

Our website and newsletter are for entertainment purposes only. This newsletter is NOT a source of unbiased information. Never invest in any stock featured on our site or emails unless you can afford to lose your entire investment. Gains mentioned in our newsletter and on our website may be based on End of Day or intraday data. The disclaimer is to be read and fully understood before using our site, or joining our email list.

Release of Liability: Through use of this email and/or website advertisement viewing or using you agree to hold Alta Waterford, its operators owners and employees harmless and to completely release them from any and all liability due to any and all loss (monetary or otherwise), damage (monetary or otherwise), or injury (monetary or otherwise) that you may incur. Alta Waterford sponsored advertisements do not purport to provide an analysis of any company's financial position, operations or prospects and this is not to be construed as a recommendation by Alta Waterford or an offer or solicitation to buy or sell any security.

COMPENSATION: Alta Waterford is often compensated in cash via bank wire by third parties for advertising services. Alta Waterford does not own any shares of profiled companies unless otherwise stated. Alta Waterford has been compensated five thousand dollars for the dissemination of this paid advertisement from Fastbase Inc.. Alta Waterford does not investigate the background of any third party. The third party may have shares and may liquidate it, which may negatively affect the stock price. Compensations constitute a conflict of interest as to our ability to remain objective in our communication regarding the profiled company. The information contained in our coverage is based on sources which we believe to be reliable but is not guaranteed by us as being accurate and does not purport to be a complete statement or summary of the available data. Alta Waterford encourages readers and investors to supplement the information in these reports with independent research and other professional advice. All information on featured companies is collected from public sources only such as the profiled company's website, news releases, and corporate filings, but has not been verified in any way to ensure the publicly available information is correct. Alta Waterford makes no representations, warranties or guarantees as to the accuracy or completeness of the disclosure by the profiled companies. Further, Alta Waterford has no advance knowledge of any future events of the

profiled companies which includes, but is not limited to, news press releases, changes in corporate structure, or changes in share structure.

None of the materials or advertisements in our coverage constitute offers or solicitations to purchase or sell securities of the companies profiled herein and any decision to invest in any such company or other financial decisions should not be made based upon the information provide herein. Instead Alta Waterford strongly urges you conduct a complete and independent investigation of the respective companies and consideration of all pertinent risks. Readers are advised to review SEC periodic reports: Forms 10-Q, 10K, Form 8-K, insider reports, Forms 3, 4, 5 Schedule 13D. Alta Waterford is compliant with the Can Spam Act of 2003. Alta Waterford does not offer such advice or analysis, and Alta Waterford further urges you to consult your own independent tax, business, financial and investment advisors. Investing in micro-cap and growth securities is highly speculative and carries and extremely high degree of risk. It is possible that an investor's investment may be lost or impaired due to the speculative nature of the companies profiled. SMS Alerts: You will receive auto-dialed text alerts from Alta Waterford. No consent req'd for purchase. Msg & data rates may apply. Msg frequency varies. Reply STOP to stop, HELP for help. —/aWEwqewQQWWE Privacy policy: —/qeiiliqilioOo0

The Private Securities Litigation Reform Act of 1995 provides investors a 'safe harbor' in regard to forward-looking statements. Any statements that express or involve discussions with respect to predictions, expectations, beliefs, plans, projections, objectives, goals, assumptions or future events or performance are not statements of historical fact may be "forward looking statements". Forward looking statements are based on expectations, estimates, and projections at the time the statements are made that involve a number of risks and uncertainties which could cause actual results or events to differ materially from those presently anticipated. Forward looking statements in this action may be identified through use of words such as "projects", "foresee", "expects", "will", "anticipates", "estimates", "believes", "understands", or that by statements indicating certain actions "may", "could", or "might" occur. Understand there is no guarantee past performance will be indicative of future results. Past Performance is based on the security's previous day closing price and the high of day price during our promotional coverage.

In preparing our publications, Alta Waterford has relied upon information supplied by various public sources and press releases which it believes to be reliable; however, such reliability cannot be guaranteed. Investors should not rely on the information contained in this email and website. Rather, investors should use the information contained in this website as a starting point for doing additional independent research on the featured companies. Alta Waterford. and its owners, affiliates, subsidiaries, officers, directors, representatives and agents disclaim any liability as to the completeness or accuracy of the information contained in any advertisement and for any omissions of materials facts from such advertisement. Alta Waterford is not responsible for any claims made by the companies advertised herein, nor is Alta Waterford responsible for any other promotional firm, its program or its structure.

**EXHIBIT "2"**

## Name History

### Entity Information

| | | | |
|---|---|---|---|
| **Entity Name:** | UNIVERSAL NEW ENERGY HOLDING GROUP, INC. | **Entity Number:** | E0455062005-4 |
| **Entity Type:** | Domestic Corporation (78) | **Entity Status:** | Active |
| **Formation Date:** | 07/15/2005 | **NV Business ID:** | NV20051510119 |
| **Termination Date:** | | **Annual Report Due Date:** | 7/31/2025 |
| **Compliance Hold:** | | | |

### Name History Details

| File Date | Effective Date | Filing Number | Consent Date | Name |
|---|---|---|---|---|
| 05/29/2019 | 05/29/2019 | | | GUINNESS EXPLORATION, INC. |

SilverFlume Nevada's Business Portal to start/manage your business                6/23/25, 7:58 PM

| 06/19/2024 | 06/19/2024 | 20244134394 | FASTBASE INC. |

**Page 1 of 1, records 1 to 2 of 2**

Back        Return to Search        Return to Results

**EXHIBIT "3"**

# The Law Office of George W. Svoboda

ATTORNEY AT LAW

P.O. Box 1299
McHenry, IL 60051
Phone: 224-360-0696
Email: george@georgesvobodalaw.com

October 10, 2024

<u>VIA ELECTRONIC MAIL</u>

Mr. Rasmus Refer
Mr. Henrik Carstensen
Fastbase, Inc.
140 Broadway
46th Floor
New York, NY 10005
via email: rr@fastbase.com

**In reference to:**        **Demand Letter for Debt Owed - Amount Owing: $125,352.50**

Dear Mr. Refer and Mr. Carstensen:

I have been retained by Alta Waterford LLC to collect from you, the entire balance on your past due accounts, which as of October 10, 2024, was $125,352.50, that you owe Alta Waterford. You entered into a contract with Alta Waterford for a marketing campaign on March 13, 2023. Alta Waterford provided the services and has not been paid.

If you want to resolve this matter without a lawsuit, you must, within five (5) days of the date of this letter, either pay Alta Waterford $125,352.50 against the balance that you owe (unless you've paid it since your last statement) or call me at (224) 360-0696 and work out arrangements for payment. If you do neither of these things, I will be entitled to file a lawsuit against you in the Circuit Court of Lake County, Illinois, for the collection of this debt, when the five days is over.

Please be advised that under the contract you signed, you will be responsible for late fees and attorney's fees, and other costs, incurred in resolving this matter.

If you have any questions concerning this matter, please contact me at (224) 360-0696 or via email at george@georgesvobodalaw.com.

Respectfully Submitted,

*George W. Svoboda*

George W. Svoboda
Attorney at Law

cc: Alta Waterford, LLC

**This communication is an attempt to collect a debt, any information obtained will be used for that purpose.**